245 N.J. Super. 220 (1991)
584 A.2d 859
IN THE MATTER OF THE APPLICATION OF JOHN WILLIAM ECK FOR LEAVE TO ASSUME THE NAME OF TINA LINDSAY.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1990.
Decided January 11, 1991.
*221 Before Judges PRESSLER, BAIME and ARNOLD M. STEIN.
Ruth E. Harlow, admitted pro hac vice, argued the cause for appellant (Margaret A. Kean, Volunteer Counsel on behalf of American Civil Liberties Union of New Jersey, attorney).
The opinion of the court was delivered by ARNOLD M. STEIN, J.A.D.
Petitioner John William Eck's request for a name change to Tina Lindsay was denied by the Law Division judge because "it is inherently fraudulent for a person who is physically a male to assume an obviously `female' name for the sole purpose of representing himself to future employers and society as a female." We reverse.
Petitioner, born John William Eck on August 3, 1941, has been divorced since 1986. Petitioner, who has a bachelor of arts degree in history and political science from Fairleigh Dickinson University with additional management and technology courses, was previously employed for fifteen years in management data processing positions. Petitioner has never filed for bankruptcy, no adverse proceedings have ever been brought for debt consolidation and there have never been any criminal convictions. There are no pending criminal or civil cases and there have been no previous name change applications. N.J.S.A. 2A:52-1; R. 4:72-1. The county prosecutor has no objection to this name change and the Attorney General filed no response to the copy of the complaint served upon his office.
Beginning about 1983, petitioner began to have the appearance of a woman and dressed as a woman except at work. Since November 1988 petitioner has lived full-time with a female *222 appearance. Petitioner is medically classified as a transsexual, a condition also described as gender dysphoria.
Petitioner, who is not currently undergoing any psychiatric or psychological treatment, was previously under the care of Dr. Lee Shaver as the primary therapist and had also obtained a second opinion from Dr. Charles Ihlenfeld, a board-certified psychiatrist who has worked with gender-dysphoric patients for over twenty years.
Dr. Ihlenfeld concluded that surgical sex reassignment was "medically and psychiatrically indicated and will contribute significantly to [petitioner's] sense of personal well-being and fulfillment." In another letter, Dr. Ihlenfeld stated that petitioner's true identity is feminine, that petitioner has been successfully living as a woman for over two years, that he considered petitioner to be a "true transsexual and an appropriate candidate for sex reassignment surgery," and that he supported petitioner's request for a legal name change to "reflect her true identity."
Petitioner's endocrinologist, Dr. Walter Futterweit, prescribes female hormones for petitioner and checks the blood for any adverse side effects. Petitioner receives estrogen and provera without complications and Dr. Futterweit highly recommended that petitioner have reassignment surgery in the near future.
One of the primary reasons petitioner seeks a change of name is to help in the search for employment. According to petitioner, job interviews go well until employers ask for references. Once petitioner mentions having been employed under the name "John," the prospective employer never again makes contact. Petitioner testified: "[I]t advertises me as being a sex change which has nothing to do with whether I can or cannot do the job, but it sort of flaunts it; it advertises it." Petitioner's current employment is piano playing and singing in a cabaret one night per week earning $50 plus tips. Petitioner has saved about half the $14,000 needed for a sex change operation.
*223 At common law, any adult or emancipated person is free to adopt any name, except for a fraudulent, criminal or other illegitimate purpose. Egner v. Egner, 133 N.J. Super. 403, 406, 337 A.2d 46 (App.Div. 1975). N.J.S.A. 2A:52-1 is remedial legislation establishing a method of judicial recordation of name changes. It is to be construed consistently with and not in derogation of the common law. In re Application of Lawrence, 133 N.J. Super. 408, 411, 337 A.2d 49 (App. Div. 1975). We perceive no fraudulent purpose in petitioner's application. Absent fraud or other improper purpose a person has a right to a name change whether he or she has undergone or intends to undergo a sex change through surgery, has received hormonal injections to induce physical change, is a transvestite, or simply wants to change from a traditional "male" first name to one traditionally "female," or vice versa. Many first names are gender interchangeable  e.g., Adrian, Evelyn, Erin, Leslie, Lynn, Marion, Robin  and judges should be chary about interfering with a person's choice of a first name.
Finally, we perceive that the judge was concerned about a male assuming a female identity in mannerism and dress. That is an accomplished fact in this case, a matter which is of no concern to the judiciary, and which has no bearing upon the outcome of a simple name change application.
Reversed and remanded to the Law Division for entry of a judgment authorizing petitioner to assume the name of Tina Lindsay.